IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH SHEA | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 17-4455 |
| USAA | : | |

## MEMORANDUM

**SURRICK, J.**                                                                                          **July 25, 2018**

Presently before the Court is Defendant USAA Casualty Insurance Company's Motion
(ECF No. 7) pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts I, IV, and V
of the First Amended Complaint.  For the following reasons, the Motion will be denied.

## I.      BACKGROUND

Plaintiff Elizabeth Shea purchased an automobile insurance policy from Defendant
USAA, which provided her with first-party and extraordinary medical benefits.  On September
16, 2016, while the policy was in force, Plaintiff was injured in a motor vehicle accident.[1]  This
action arises as a result of Defendant's denial of Plaintiff's claim for medical benefits under the
policy.

On October 5, 2017, Plaintiff filed a Complaint.  On December 18, 2017, in response to
Defendant's first motion to dismiss, Plaintiff filed an Amended Complaint.  (Am. Compl., ECF
No. 6).  The Amended Complaint alleges that Defendant refused to pay Plaintiff's medical

---

[1] It is not disputed that on September 16, 2016, Plaintiff was the named insured on the policy,
which provides $100,000 of first-party medical benefits, and additional extraordinary medical
benefits, covering medical treatment that is reasonable, necessary, and related to the automobile
accident.  (Am. Compl. ¶¶ 4-5, 11, 13.)  It is also not disputed that Plaintiff was stopped at a red
light when another vehicle rear-ended the car she was driving.  The collision caused injuries to
Plaintiff's right shoulder, elbow, lumbar and cervical spine, and head.  The medical treatment for
these personal injuries were within the policy's coverage for first-party medical benefits.  (*Id.* ¶
9.)  Plaintiff provided Defendant prompt and reasonable notice of her claim for insurance
benefits.  (*Id.* ¶ 16, Ex. A.)

benefits in breach of the terms of the insurance contract (Count I) and in violation of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. §§ 1701–1799.7 (West 2018) (Counts II, III). In addition, Plaintiff alleges that Defendant abused the MVFRL's Peer Review Organization ("PRO") process, *id.* § 1797, by procuring sham medical opinions to support its denial of medical benefits. That conduct, Plaintiff contends, mandates compensatory damages for breach of the insurance contract's implied covenant of good faith and fair dealing (Count I); punitive damages and other remedies for violation of Pennsylvania's bad faith statute, 42 Pa.C.S.A. § 8371 (West 2018), (Count IV); and damages under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1–201.9.3 (West 2018) (Count V). On February 16, 2018, Defendant moved to dismiss Counts I, IV, and V.

## II. <u>ALLEGATIONS OF THE AMENDED COMPLAINT</u>[2]

Plaintiff's treating providers submitted bills to Defendant for Plaintiff's medical treatment, which in the opinion of those providers was reasonable, necessary, and related to the accident. (Am. Compl. ¶¶ 20, 45-51, Exs. B, C, D.) Her treatment included surgery to her right shoulder. (*Id.* ¶ 45, Exs. B, C.) The bills currently total $250,229.14, and Plaintiff expects that ongoing treatment will be necessary. (*Id.* ¶¶ 10, 20.) Defendant has paid $3,560.31 of those bills. (*Id.* ¶ 21.)

---

[2] The facts recounted are those alleged in the Amended Complaint, which facts are accepted as true. *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 264 n.1, 268 (3d Cir. 2016) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "[F]or purposes of Rule 12(b)(6), a court 'must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" *Id.* at 273 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

The Amended Complaint alleges that Defendant "had a business model which relied upon improperly refusing to pay medical treatment for customers [insureds such as Plaintiff] who select high levels of first party medical coverage." (Am. Compl. ¶ 7.) It is alleged that Defendant "[chose] to acquire medical opinions through the peer review process, for the purpose of minimizing any potential exposure to" Plaintiff's claims for insurance benefits. (*Id.* ¶¶ 15-16.) "[T]hese reviews were not rendered independently and were focused on generating false and misleading reports in order to save USAA money at the expense of Plaintiff." (*Id.* ¶ 53.)

Defendant used the PRO Disability Management Consultants ("DMC"). It is alleged that DMC's consultants "performed substantial peer review work" for Defendant; "continuously and regularly provided . . . peer reviews unfavorable to the interests of Defendant's customers; and have a financial interest in providing Defendant a biased peer review report." (*Id.* ¶¶ 24-25, 76. It is alleged that DMC "has, or may have been continuously providing negative peer review reports to Defendant and other insurance companies for the purpose of maintaining a steady source of business, therefore showing a pattern of abuse of the peer review process." (*Id.* ¶ 76.)

Finally, the Amended Complaint alleges that Defendant "has undertaken a course of conduct" which has "been designed to unilaterally, and without justification, refuse to honor Plaintiff's claim for medical benefits [causing] . . . Plaintiff to become personally responsible for medical bills" stemming from the accident. (*Id.* ¶ 59.) All nine peer reviews of Plaintiff's medical bills were performed by DMC. (*Id.* ¶¶ 25, 26-43.) However, none of the peer reviewers examined Plaintiff. (*Id.* ¶ 44.) Nevertheless, each of the peer reviewers concluded that some or all of Plaintiff's treatment was not medically necessary, and that Plaintiff required no further treatment. (*Id.* ¶¶ 26-44.) All of Plaintiff's treating physicians offered opinions that her treatment was and will be medically necessary. (*Id.* ¶¶ 45-51.)

### III.   LEGAL STANDARD AND APPLICABLE LAW

Under Rule 8, a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12 provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556)).

In determining whether the pleading standard has been met, "our analysis unfolds in three steps." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "First, we outline the elements a plaintiff must plead to state a claim for relief." *Id.* (citing *Iqbal*, 556 U.S. at 675). "Next, we

peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* (citing *Iqbal*, 556 U.S. at 679). "Finally, we look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'" *Id.* "This last step is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.*

Neither party disputes the applicability of Pennsylvania's substantive law. However, there are conflicting decisions of the state courts and the federal courts regarding a crucial issue—whether the MVFRL's provisions for peer review of first-party medical benefits supplants the claims for breach of contract, bad faith, and consumer protection law violations. Pennsylvania's Supreme Court has not addressed how the peer review provisions interact with any of these laws. In predicting how that court would resolve the issues presented here, we must give "'due deference'" to the decisions of Pennsylvania's intermediate courts. *Crystallex Int'l Corp. v. Petróleos de Venezuela, S.A.*, 879 F.3d 79, 84 (3d Cir. 2018) (quoting *In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014)). "Unlike our role in interpreting federal law, we may not 'act as a judicial pioneer' in a diversity case." *Id.* (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 254 (3d Cir. 2010) (citation omitted)).

## IV.    DISCUSSION

Defendant contends that the MVFRL preempts Plaintiff's claims for breach of contract, bad faith, and consumer protection law violations in Counts I, IV, and V of the Amended Complaint. Specifically, Defendant argues that the peer review provisions set forth in Section 1797 of the MVFRL, 75 Pa.C.S.A. § 1797, provide the "exclusive" and "sole remedies" for an insurer's wrongful refusal to pay its insured first-party medical benefits. (Def. Br. 5, 7, 8, 9, 10.) Our analysis begins with a review of the MVFRL and Section 1797's peer review provisions.

## A.  Statutory Framework of the MVFRL's Peer Review Process

Under the MVFRL, an insurer issuing a liability insurance policy covering a motor vehicle of the type required to be registered under title 75 must include coverage that provides a medical benefit in the minimum required amount of $5,000.  75 Pa.C.S.A. § 1711(a).  With regard to overdue payments of medical benefits, the statute provides:

> Benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits.  If reasonable proof is not supplied as to all benefits, the portion supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer.  Overdue benefits shall bear interest at the rate of 12% per annum from the date the benefits become due.  In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee . . . .

*Id.* § 1716.

Section 1797 of the MVFRL sets forth procedures for evaluating charges for medical treatment rendered to an injured person who is insured for first-party medical benefits, using the criterion of the reasonableness and necessity of the treatment.  Section 1797 provides in part:

> Peer review plan.—Insurers shall contract jointly or separately with any peer review organization established for the purpose of evaluating treatment, health care services, products or accommodations provided to any injured person.  Such evaluation shall be for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary.

75 Pa.C.S.A. § 1797(b)(1).  "Because § 1797 was enacted after § 1716 and sets out a specific procedure for the evaluation of claims, it—and not § 1716—provides the exclusive system for the insurance company to challenge the reasonableness and necessity of treatment and describes the damages under certain circumstances."  *Schwartz v. State Farm Ins. Co.*, No. 96-160, 1996

WL 189839, at *3 (E.D. Pa. Apr. 18, 1996) (citing *Danton v. State Farm Mut. Auto. Ins. Co.*, 769 F. Supp. 174, 177 (E.D.Pa.1991)).[3]

## B.    Application of the MVFRL to the Claims Presented in This Case

Defendant contends that Plaintiff challenges the findings of the peer reviewers, who were selected by Defendant to evaluate the reasonableness and necessity of the charges for her medical treatment.  (Def. Br. 4, 10.)  Defendant oversimplifies Plaintiff's position.

The allegations in Counts I, IV, and V of the Amended Complaint not only challenge the peer reviewers' findings, determinations, or conclusions as to the charges for treatment rendered, but also allege that Defendant did not use its chosen PRO for the statutorily prescribed purpose of confirming whether Plaintiff's treatment was medically appropriate and necessary.  75 Pa.C.S.A. § 1797(b)(1).  Specifically, they allege that Defendant misused the peer review procedures for an entirely different purpose—that is, obtaining biased, predetermined medical opinions that were false, misleading, and designed to support Defendant's preordained denial of

---

[3] Section 1797 provides a framework for an insurer to challenge the reasonableness and necessity of an insured's medical treatment.  An insurer may submit an insured's medical bill to a PRO "for the purpose of confirming that such treatment . . . [is] medically necessary."  *Id.* § 1797(b)(1).  An insurer, provider or insured may request reconsideration by the PRO of its initial determination.  *Id.* § 1797(b)(2).  While the PRO's determination is pending, the insurer need not pay the provider, and the insured may not be billed for treatment.  *Id.* § 1797(b)(3).  If a PRO determines that treatment was medically necessary, the insurer must pay the provider the outstanding amount plus 12% interest per annum on amounts withheld by the insurer pending the PRO's review.  *Id.* § 1797(b)(5).  If an insurer has not challenged the reasonableness and necessity of a provider's charge for medical treatment before a PRO, the provider may challenge before a court the insurer's refusal to pay the charges.  *Id.* § 1797(b)(4).  If a court determines that treatment was medically necessary, the insurer must pay the provider the outstanding amount plus 12% interest per annum as well as all attorney fees and costs.  *Id.* § 1797(b)(6). "Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party."  *Id.* § 1797(b)(4).  If a PRO or a court determines that the provider rendered unnecessary treatment, or that future treatment will be unnecessary, the provider cannot collect payment.  *Id.* § 1797(b)(7).  If payment has already been collected, the provider must return the amount plus 12% interest per annum.  *Id.*  However, "[i]n no case does the failure of the provider to return the payment obligate the insured to assume responsibility for payment for the treatment . . . ."  *Id.* 75 Pa.C.S.A. § 1797(b)(1)–(7).

insurance for medical benefits. The gravamen of Plaintiff's pleading is that Defendant used a favored and financially self-interested PRO to abuse the peer review process.

Counts I, IV, and V are based on the same course of conduct—an alleged abuse of the peer review process that produced sham medical opinions. At issue in each Count is whether Defendant in fact followed the statutorily required peer review process to obtain independent and unbiased opinions as to the reasonableness and necessity of Plaintiff's medical treatment. We are satisfied that each of these Counts states a claim for relief that survives dismissal.

### 1. Claim for Compensatory Damages for Breach of Contract

Defendant contends that the claim for common law breach of contract in Count I invokes general principles and remedies which are precluded by the specificity of the MVFRL's peer review provisions, 75 Pa.C.S.A. § 1797. (Def. Br. 10-11.) Defendant contends that the MVFRL's greater specificity "preempts" and "precludes" the claim for common law breach of contract. (*Id.* (citing 1 Pa.C.S.A. § 1504).)[4] Defendant has provided no authority to support this position.

In essence, the Amended Complaint alleges that Defendant breached the insurance contract by misusing the peer review process to manufacture false and misleading medical opinions to support a preordained denial of insured medical benefits. That improper conduct, it is alleged, breached the insurance contract and caused Plaintiff to become personally responsible for her otherwise insured medical treatment. (*See, e.g.*, Am. Compl. ¶¶ 10, 24-25, 53, 58-59; Pl. Br. 6-7.) Plaintiff asserts that the "bad faith and breach of contract claims are so entwined that one cannot stand without the other." (*Id.* at 6.)

---

[4] The statute states: "In all cases where a remedy is provided, or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect." 1 Pa.C.S.A. § 1504.

Plaintiff's breach of contract claim is founded in large part on an alleged abuse of the peer review process that produced sham medical opinions. Plaintiff's claim for bad faith is founded largely on the same course of conduct. The two claims are entwined in that sense.

However, under Pennsylvania law, the same actions by an insurer can give rise to two separate causes of action: one for the insurer's breach of the insurance contract's implied covenant of good faith and fair dealing, and the other for the insurer's violation of its duty of good faith under the bad faith statute. *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 496-97 (3d Cir. 2015) (citing *Cowden v. Aetna Cas. & Sur. Co.*, 134 A.2d 223, 227 (1957); 42 Pa.C.S.A. § 8371). "These duties are discrete; one is imposed by virtue of a contract, and the other is imposed by statute." *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 883 (Pa. 2007).

Pennsylvania courts define the contractual duty of good faith and fair dealing as "'[h]onesty in fact in the conduct or transaction concerned.'" *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (quoting *Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1253 (Pa. Super. Ct. 2002)). A "'claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim.'" *Id.* (quoting *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 392 (Pa. Super. Ct. 2008)). A "'claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself.'" *Davis v. Wells Fargo*, 824 F.3d 333, 352 (3d Cir. 2016) (quoting *JHE, Inc. v. Se. Pa. Transp. Auth.*, No. 1790, 2002 WL 1018941, at *5 (Pa. Com. Pl. May 17, 2002)). A successful plaintiff is entitled to recover "'the known and/or foreseeable compensatory damages of its insured that reasonably flow from the bad faith conduct of the insurer.'" *Wolfe*, 790 F.3d at 497 (quoting *Birth Ctr. v. St. Paul Cos., Inc.*, 787 A.2d 376, 379 (Pa. 2001)).

Pennsylvania does not recognize a common law remedy for an insurer's bad faith actions. *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 372 (Pa. 2017) (citing *D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co.*, 431 A.2d 966, 970 (Pa. 1981)); *Ash*, 932 A.2d at 882-83; *Johnson v. Beane*, 664 A.2d 96, 99 n.3 (Pa. 1995) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Under Section 8371, the duty of good faith "is one imposed by law as a matter of social policy, rather than one imposed by mutual consensus," and the cause of action is a "statutorily-created tort action." *Ash*, 932 A.2d at 885. Consequently, an action for statutory bad faith is wholly separate and distinct from a common law action for breach of the contractual covenant of good faith and fair dealing. *Id.* at 884; *Wolfe*, 790 F.3d at 499 n.10. Each cause of action succeeds or fails on its own merits, independently of the other.

Defendant's position that the MVFRL's peer review process "preempts" the existing common law remedy for breach of an insurance contract's implied covenant of good faith and fair dealing is simply wrong. Section 1797 does not refer to or explicitly abrogate that remedy. Moreover, Section 1797 is not inconsistent with the common law. Section 1797 alters an insured's contract rights only as to those medical expenses that are in fact evaluated through the peer review process for the purpose of determining whether the "treatment, health care services, products or accommodations . . . conform to the professional standards of performance and are medically necessary." 75 Pa.C.S.A. § 1797(b)(1). Section 1797 does not prohibit an action for compensatory damages arising from breach of the insurance contract's implied covenant of good faith and fair dealing where those damages are otherwise available.

Under Pennsylvania contract law, the "necessary material facts that must be alleged for such an action are simple: there was a contract, defendant breached it, and plaintiff[ ] suffered damages from the breach." *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010);

*accord Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman,*

*P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).  Here, the Amended Complaint alleges each of those

elements.  Viewing the allegations in the light most favorable to Plaintiff, the pleading raises a

reasonable expectation that discovery will produce evidence that an insurance contract existed

between Plaintiff and Defendant, Defendant breached the contract, and that breach caused

Plaintiff to incur ascertainable losses.  The breach of contract claim survives dismissal.

### 2.      Claim for Statutory Bad Faith Remedies

Defendant contends that the claim in Count IV for bad faith under 42 Pa.C.S.A. § 8371,

invokes more general provisions and remedies as compared to those of the MVFRL's peer

review provisions, 75 Pa.C.S.A. § 1797.  (Def. Br. 7, 9-10.)  In Defendant's view, the greater

specificity of Section 1797 preempts any remedies provided by Section 8371.  (*Id.* (citing 1

Pa.C.S.A. § 1933).)[5]  In addition, Defendant contends that because the two statutes provide

"incongruous" and "irreconcilable" remedies, the more specific statute governing the peer review

process should control.  (*Id.* at 7-9.)  Finally, Defendant contends that the allegations of statutory

bad faith do not meet Rule 8's pleading standard because they are not supported by sufficient

facts.  (*Id.* at 11-12, 13.)

Section 8371 provides a private cause of action "arising under an insurance policy,"

where "the insurer has acted in bad faith toward the insured."  42 Pa.C.S.A. § 8371.  "Bad faith"

has been defined as "'any frivolous or unfounded refusal to pay proceeds of a policy; it is not

---

[5] Section 1933 provides:  "Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both.  If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail."  1 Pa.C.S.A. § 1933.

necessary that such refusal be fraudulent.'" *Wolfe*, 790 F.3d at 498 (quoting *Terletsky*, 649 A.2d at 688). Section 8371 specifically provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>>
>> (2) Award punitive damages.
>>
>> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371(1)–(3). A successful plaintiff "must show by clear and convincing evidence [1] that the insurer did not have a reasonable basis for denying benefits under the policy and [2] that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Wolfe*, 790 F.3d at 498 (citing *Terletsky*, 649 A.2d at 688) (alterations added). Under this two-pronged test, proof of an insurer's motive of self-interest or ill-will is probative of an insurer's knowledge or recklessness, but is not a required element under Section 8371 for a finding of bad faith. *Rancosky*, 170 A.3d at 373-74, 376-77.

A comparison of Section 8371 and Section 1797 reveals that they provide different measures for awards of interest and exemplary damages. Moreover, because Section 1797 provides specific recoveries when first-party medical benefits are challenged and determined through the peer review process, there are cases that treat the specific provisions of Section 1797 as an exception to the general remedy under Section 8371 for an insurer's bad faith conduct. [6]

---

[6] *Compare* Section 8371 to Section 1797, which provides: Where a PRO determines that treatment was medically necessary, the insurer must pay the provider the outstanding amount plus 12% interest per annum on amounts withheld by the insurer pending the PRO's review. 75 Pa.C.S.A. § 1797(b)(5). Where an insurer has not challenged before a PRO the necessity of a provider's charge for medical treatment, and a court determines that treatment was medically necessary, the insurer must pay the provider the outstanding amount plus 12% interest per annum as well as all attorney fees and costs. *Id.* § 1797(b)(4), (b)(6). "Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party." *Id.* § 1797(b)(4).

These cases conclude that Section 1797 preempts all claims for first-party medical benefits, supplanting any bad faith remedies under Section 8371. *See, e.g.*, *Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 67 (3d Cir. 1994); *Barnum v. State Farm Mut. Auto. Ins. Co.*, 635 A.2d 155, 158 (Pa. Super. Ct. 1993), *rev'd in part on other grounds*, 652 A.2d 1319 (Pa. 1994).

In *Gemini*, the plaintiff providers, as assignees of the insureds' rights under their automobile policies, sued for compensatory damages under the MVFRL and punitive damages under Section 8371, among other claims. The district court dismissed the bad faith claim, ruling that Section 1797 provides the exclusive remedy for bad faith denials of first-party medical benefits. The Third Circuit affirmed the dismissal, citing *Barnum*. *Gemini*, 40 F.3d at 67 (citing *Barnum*, 635 A.2d at 158-59). In *Barnum*, the Pennsylvania Supreme Court held that Section 1797 and Section 8371 cannot be reconciled because the damages in the event of wanton versus bad faith conduct and the interest rates specified in each statute are different. 635 A.2d at 158. In addition, the *Barnum* court found that Section 1797's procedures and remedies are set forth with specificity and because the two statutes were enacted at the same time and cannot be reconciled, the specific provisions of Section 1797 must be deemed an exception to the general remedy for bad faith contained in Section 8371. *Id.* at 158-59 (citing 1 Pa.C.S.A. § 1933). The *Gemini* court found *Barnum's* statutory construction "convincing."[7]

---

If a PRO or a court determines that the provider rendered unnecessary treatment, or that future treatment will be unnecessary, the provider cannot collect payment or must return amounts collected plus 12% interest per annum. *Id.* § 1797(b)(7).

[7] After the Third Circuit's decision in *Gemini*, the Pennsylvania Supreme Court reversed the superior court's decision in *Barnum*. *Barnum*, 652 A.2d 1319. The reversal was limited to the issue of whether an insured must request reconsideration under Section 1797(b)(2) before seeking judicial review under Section 1797(b)(4). Thus, "[t]he substantive rationale undergirding *Gemini's* holding thus remains sound." *Metro. Grp. Prop. & Cas. Ins. Co. v. Hack*,

It is important to note that *Gemini* and *Barnum* did not involve circumstances analogous to those presented here. In those cases, the insurers questioned medical bills for the treatment rendered to their insureds and complying with Section 1797, submitted the bills to a PRO for evaluation. The plaintiffs complained of the denial of first-party medical benefits that had actually been determined through the peer review process outlined in Section 1797. The plaintiffs did not claim that their insurer failed to follow or in any way abused the peer review process.

Another line of cases focuses on the scope of Section 1797, which by its plain language is narrowly limited to an evaluation of whether "treatment, health care services, products or accommodations . . . conform to the professional standards of performance and are medically necessary." 75 Pa.C.S.A. § 1797(b)(1). The case of *Schwartz v. State Farm Ins. Co.*, No. 96-160, 1996 WL 189839 (E.D. Pa. Apr. 18, 1996) was the genesis of what is now a growing majority of courts holding that Section 8371 is not preempted when an insurer's alleged misconduct goes beyond the scope of Section 1797. *See also Hack*, 2018 WL 1095565, at *4-5 (noting a "prevailing consensus" among a "robust majority" of courts emanating from the reasoning in *Schwartz*); *Perkins v. State Farm Ins. Co.*, 589 F. Supp. 2d 559, 565 & n.3 (M.D. Pa. 2008) (collecting cases).

For example, Section 1797 does not extend to claims for interpretation of an insurance contract, disputes as to whether the motor vehicle accident caused the insured's injuries, or claims that the insurer did not invoke or properly follow the peer review process. *Hack*, 2018 WL 1095565, at *4; *Perkins*, 589 F. Supp. 2d at 566; *Schwartz*, 1996 WL 189839, at *4. As

_____

No. 16-1342, ___ F. Supp. 3d ___, 2018 WL 1095565, at *4 n.3 (M.D. Pa. Feb. 2, 2018) (Conner, Ch. J.).

*Schwartz* explained, "[n]othing in *Barnum* or *Gemini* suggests that a bad faith insurance coverage claim under § 8371 is barred by § 1797 where the peer review process set out in § 1797, namely to determine the propriety of treatment and charges therefore, is not actually followed." *Id.* As *Schwartz* noted, *Barnum* is consistent with this approach: "'The provisions of [§] 1797 are narrowly limited to those situations in which a disputed claim is to be submitted to the PRO procedure. . . . If the procedure is followed by an insurer, its liability cannot be greater than as therein set forth.'" *Id.* (quoting *Barnum*, 635 A.2d at 158-59).

We join the growing majority of federal and state courts that have followed the rationale of *Schwartz*. "Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both." *Schwartz*, 1996 WL 189839, at *5 (citing 1 Pa.C.S.A. § 1933). Where an insurer has not complied with Section 1797's specific provisions, there is no reason to limit the damages recoverable from the insurer to those damages set out in Section 1797. *Id.* In those situations, as alleged here, Section 1797 and Section 8371 are not irreconcilable. *Id.* Both statutes can be given full effect: Section 1797 is the exclusive remedy when it applies; Section 8371 applies in all other cases. *Id.*

Defendant moves for dismissal on another ground, contending that the Amended Complaint's bad faith allegations are insufficient to meet Rule 8's pleading standard. However, pleading evidence is not required. Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555.

In the context of this case, the pleading contains sufficient factual matter to state a plausible claim for bad faith under Section 8371. Among other things, the pleading shows a

marked disparity between the evaluations made by Plaintiff's treating physicians compared to those made by Defendant's PRO, none of whose nine peer reviewers ever examined Plaintiff. Each of the peer reviewers uniformly concluded that some or all of Plaintiff's treatment was not medically necessary. One side or the other is seriously mistaken as to whether Plaintiff's treatment was necessary. Viewing these facts in the light most favorable to Plaintiff, the pleading raises a reasonable expectation that discovery will reveal evidence of abuse of the peer review process.

Furthermore, it is reasonable to expect that discovery will reveal evidence that Plaintiff's case was neither the only instance of abusive insurance practices nor an anomaly. It is alleged that Defendant knew Plaintiff's insurance claim was legitimate, but still submitted the medical bills for her treatment to a favored and financially self-interested PRO. Defendant did so, it is alleged, planning or at least fully expecting to procure evaluations that were biased, false, and misleading as to the necessity for Plaintiff's treatment, in order to support Defendant's preordained decision to preserve its own coffers by denying Plaintiff insured medical benefits. Taking these alleged facts as true, Defendant has acted not only outside the scope of Section 1797, but also in bad faith by refusing to pay Plaintiff's insurance claim without a reasonable basis for the denial of insured medical benefits. Accordingly, the Count IV claim for bad faith under Section 8371 survives dismissal.

### 3. Claim for UTPCPL Remedies

Defendant contends that the Count V claim for violations of the UTPCPL invokes more general provisions and remedies as compared to those of the MVFRL. (Def. Br. 11.) Defendant's argument once again mirrors its position in general—namely, that the MVFRL's "specific framework of how to apply, review, administer, and dispute" insurance for first-party

medical benefits provides the exclusive remedy.  (*Id.*)  In Defendant's view, the greater specificity of the MVFRL preempts any remedies provided by the UTPCPL.  (*Id.*)  Defendant's argument is supported solely by general citation to Pennsylvania's Statutory Construction Act, 1 Pa.C.S.A. § 1933 and *Gemini*, which affirmed dismissal of a provider's UTPCPL claim for lack of standing.  The issue of preemption was never presented.  Defendant proffers no further elaboration or proposed authority.

The MVFRL does not preempt the UTPCPL, as Defendant proposes.  A private cause of action under the UTPCPL is "'designed to protect the public from fraud and deceptive business practices.'"[8] *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 497 (3d Cir. 2013) (quoting *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 564 (3d Cir. 2008)).  Pennsylvania's Supreme Court has directed that the statute is to be liberally construed to protect consumers. *Ash*, 932 A.2d at 881.  This directive requires that "even where the unlawful practice is directly addressed by another consumer-related statute, a plaintiff may nevertheless pursue his action under the UTPCPL since that statute is broad enough to encompass all claims of unfair and deceptive acts or practices in the conduct of any trade or commerce."  *Id.*

Moreover, the "paramount objective" and "overarching goal" of construing statutes is to "ascertain and effectuate the intention of the General Assembly in enacting the legislation under review, . . . and the primary indication of the legislature's intent is the plain language of the statute."  *In re Borough of Downingtown*, 161 A.3d 844, 870-71 (Pa. 2017) (citation and internal quotation marks omitted).  No provision in the MVFRL or the UTPCPL indicates that the

---

[8] The statute provides, in part:  "Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act, or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater."  73 P.S. § 201-9.2.

General Assembly intended either statute to predominate over the other under the circumstance presented here—where it is alleged that an insurer fraudulently and deceptively abused the peer review process in order to procure sham medical opinions to support its preordained denial of insured medical benefits. Therefore, the two statutes must be construed, if possible, to give effect to both. *Id.* at 871.

The two statutes coexist harmoniously. Their provisions regulate different subject matters but protect overlapping classes of consumers. The UTPCPL protects purchasers of goods or services from fraudulent and deceptive business practices, whereas the MVFRL protects motorists purchasing insurance from rising costs. "The primary purpose of the MVFRL, and especially the 1990 amendments [which in part added Section 1797] was to control the cost of insurance such that a higher percentage of drivers would be able to afford insurance." *Everhart v. PMA Ins. Grp.*, 938 A.2d 301, 306 (Pa. 2007) (alteration added); *Toth v. Donegal Cos.*, 964 A.2d 413, 418 (Pa. Super. Ct. 2009). The fact that the two statutes provide overlapping protections is not enough to establish preemption by one of them. "In fact, there are various instances of overlapping, coordinated, and uncoordinated protections contained within the diverse range of state and federal regulatory statutes, particularly those governing consumer affairs." *Glover v. Udren Law Offices*, P.C., 139 A.3d 195, 200 (Pa. 2016). *Cf. Fazio v. Guardian Life Ins. Co. of Am.*, 62 A.3d 396, 410 (Pa. Super. Ct. 2012), *rearg. denied* Feb. 15, 2013 ("[T]he remedies of the UTPCPL are not exclusive, but are in addition to other causes of action.") (internal quotation marks omitted); *Commonwealth ex rel. Fisher v. Allstate Ins. Co.*, 729 A.2d 135, 139-41 (Pa. Commw. Ct. 1999) (ruling that Pennsylvania's Unfair Insurance Practices Act is not the sole and exclusive remedy for fraudulent insurance practices; such conduct can be redressed under the UTPCPL as well).

"It is only when the provisions of two statutory enactments are irreconcilable that it is necessary to resort to other statutory construction principles, such as the more specific statute governs the general one." *Downingtown*, 161 A.3d at 871 (citing 1 Pa.C.S.A. § 1933). Defendant has not shown or established that to be the case here.

Defendant contends that the Amended Complaint's allegations of violations of the UTPCPL are insufficient to meet Rule 8's pleading standard. (Def. Br. 11-12.) Furthermore, Defendant faults the pleading for not identifying which of the UTPCPL's twenty-one expressly prohibited practices have allegedly been violated. (*Id.* at 13.) "The UTPCPL regulates an array of practices which might be analogized to passing off, misappropriation, trademark infringement, disparagement, false advertising, fraud, breach of contract, and breach of warranty." *Ash*, 932 A.2d at 881 (internal quotation marks omitted); 73 P.S. § 201-2(4)(i)–(xxi). Plaintiff responds that she sues broadly for business fraud and in particular for violation of the UTPCPL's catchall provision, which provides a private right of action against a person for engaging in "other forms of fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding, 73 P.S. § 201.2." (Pl. Br. 15-18 (internal citation omitted); *see also* Am. Compl. ¶¶ 63-67.)

Pennsylvania courts hold that the 1996 amendment of the UTPCPL adding the catchall provision lessened the degree of proof required—that is, a plaintiff need not establish common law fraud to prevail on a claim for deceptive conduct under the catchall provision. *Krishnan v. Cutler Grp., Inc.*, 171 A.3d 856, 893 (Pa. Super. Ct. 2017) (citing *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 153-54 (Pa. Super. Ct. 2012)). To establish a claim for deceptive conduct under the catchall provision, a plaintiff must show: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable

reliance on that act; and (3) that plaintiff's justifiable reliance caused an ascertainable loss. *Hall v. Equifax Info. Servs. LLC*, 204 F. Supp. 3d 807, 810 (E.D. Pa. 2016) (Stengel, Ch. J.); *Malibu Media, LLC v. Doe*, 238 F. Supp. 3d 638, 647 (M.D. Pa. 2017) (Conner, Ch. J.).

Pennsylvania law requires an additional element for a private action under the UTPCPL that is based on a contract: "'only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL], and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable.'" *Gardner*, 544 F.3d at 564 (alteration in original) (quoting *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 307 (3d Cir. 1995) (citing *Gordon v. Pa. Blue Shield*, 548 A.2d 600, 604 (Pa. Super. Ct. 1988)); *accord Nordi v. Keystone Health Plan W. Inc.*, 989 A.2d 376, 385 (Pa. Super. Ct. 2010).

Here, the Count V UTPCPL claim meets Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief," giving Defendant fair notice of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *see Twombly*, 550 U.S. at 555 (noting that a complaint does not need "detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss). In the context of this case, the pleading contains sufficient factual matter to state a plausible claim for deceptive conduct under the UTPCPL's catchall provision. Viewing those allegations in the light most favorable to Plaintiff, malfeasance is pled. Defendant, it is alleged, deceptively misused the peer review process in order to procure sham medical opinions to supports its preordained denial of insured medical benefits. This shows more than a "[m]ere refusal to pay a claim or failure to investigate or take other action." *Nordi*, 989 A.3d at 385.

The pleading also raises a reasonable expectation that discovery will reveal evidence that Defendant's improper performance of its contractual duties constitutes both deception and consumer fraud. Taking the pled allegations as true, Defendant modeled and regularly operated its insurance business to profit by misusing the peer review process. Defendant did so with the intent that motorists purchasing its policies, such as Plaintiff, would detrimentally rely on a deceptive, misleading, and false offer of insurance for medical treatment arising from the use of motor vehicles. The denial of Plaintiff's insurance claim for medical benefits was but one instance of Defendant's pattern of abuse of the peer review process. With regard to the treatment rendered for Plaintiff's injuries, Defendant procured peer review evaluations that were biased, misleading, and false. Defendant knew or recklessly disregarded the misleading quality and falsity of the peer reviewers' evaluations. Plaintiff purchased insurance on the public market, having no reason to believe that the offer of insurance was an empty promise. Plaintiff justifiably relied on Defendant's promise of insurance in the event that she was injured in a motor vehicle accident. Plaintiff's reliance on the illusory insurance she purchased caused her to become personally responsible for her otherwise insured medical treatment, a sum which is ascertainable. Accordingly, the UTPCPL claim survives dismissal.

## V.     CONCLUSION

For the foregoing reasons, USAA's Motion pursuant to Rule 12(b)(6) to dismiss Counts I, IV, and V of the First Amended Complaint will be denied.

An appropriate order accompanies this Memorandum.

**BY THE COURT:**

**R. BARCLAY SURRICK, J.**